BROWN v. BYAM ET AL.

1. **Vendor's Lien :** FACTS ENTITLING TO: CONSPIRACY TO CHEAT VENDOR. Plaintiff sold defendants a farm for the consideration of $1,600, of which $600 was paid in cash, and for the residue of which defendants were to convey to him certain village property, valued at $1,000. But, at plaintiff's suggestion, defendants, for the time being, retained the legal title to the village property, but gave to plaintiff a bond for a deed therefor. Afterwards, through a conspiracy with another, (for the facts see opinion,) and by fraudulent representations as to the value of a certain railroad bond of the face value of $1,000, defendants induced plaintiff to accept the bond, which proved to be worthless, in lieu of a deed for the village property. *Held* that the last transaction did not amount to a sale of the village property to defendants, but only to an agreement to accept the bond, instead of a deed to the village property, in part payment for the farm, and that, the bond being worthless, and having been imposed upon plaintiff by the fraud of defendants, it did not amount to a payment on the farm, and that plaintiff was entitled to have a ven-

dor's lien established on the farm for the $1,000.   Compare *McDole v. Purdy*, 23 Iowa, 277.

2. **Evidence**: DEPOSITION MAY BE USED BY EITHER PARTY.   Where a deposition was taken by defendants, and other depositions were taken by plaintiff to rebut the testimony given in the deposition taken by defendants, and defendants afterwards gave notice that they would not introduce their deposition, *held* that it was competent for plaintiff, nevertheless, to introduce *all* the depositions, for the purpose of establishing facts material to the issue.

3. ————: SUBORNATION OF PERJURY: INFERENCE AGAINST SUBORNER.   One who procures another to give false testimony in support of a point in issue. inferentially admits thereby that he cannot establish the point by truthful testimony.

*Appeal from Delaware Circuit Court.*

THURSDAY, DECEMBER 11.

THIS is an action in equity to establish a vendor's lien on real estate.   It is alleged in the petition that in 1866 plaintiff, being the owner of a farm of 100 acres, in Delaware county, entered into a contract with defendants for the sale of said farm to them at the price of $1,600; that it was agreed between the parties that plaintiff would accept, in part payment for said farm, either certain village property in the town of Cascade, in Dubuque county, or a tract of 95 acres of land in Crawford county, as he should determine, after making an examination of the Crawford county land; that he did examine said land, and determined to accept the Cascade property, and so notified defendants; that he executed and delivered to defendant, Esther J. Byam, a warranty deed for the farm, and they gave him a bond for a deed for the property in Cascade, and paid him $600, that being the difference between the price of the farm and the price at which he was to take the Cascade property; that afterwards, and before any conveyance of the Cascade property was executed, they conspired and confederated with a person, who was unknown to plaintiff, to cheat and defraud him; that, in pursuance of this conspiracy, said stranger approached plaint-

iff and represented to him that he desired to purchase said tract of land in Crawford county, and induced him to go with him to defendants for the purpose of effecting such a purchase; that the stranger then offered to purchase said land, and pay the sum of $1,000 therefor; that defendants then requested plaintiff to sell said land to the stranger, and accept and keep the price which he offered to pay for the same, and permit them to retain the Cascade property, and agreed that if he would do this they would convey the Crawford county land directly to the stranger; and that, relying upon the honesty and good faith of the parties, plaintiff consented and agreed that he would accept said sum of money, and permit defendants to convey said land to said stranger, and retain the Cascade property; that defendants and said stranger then induced plaintiff to accept a railroad bond for $1,000, in lieu of that amount of money, by the representations that said bond was valid and well worth its par value, and that, relying upon this representation as true, he did consent to accept said bond, and then and there delivered to defendants their bond for a conveyance of the Cascade property, and they executed a conveyance of the Crawford county land to said stranger; that plaintiff afterwards learned that said railroad bond was utterly worthless, and that the Crawford county land was not in fact sold to said stranger, and that the whole transaction and pretense of selling the same was in pursuance of the fraudulent scheme entered into between them and said stranger to cheat and defraud plaintiff, by inducing him to accept said worthless railroad bond in part payment of said farm; and the prayer is for judgment for the amount of the bond, with interest, and that a vendor's lien therefor be established on said farm.

Defendants, in their answer, admit the sale and conveyance by plaintiff to defendant, Esther J. Byam, of said farm, at the price and on the terms alleged in the petition. They also admit the conveyance by them of the Crawford county lands to one A. Wilkinson, but deny that there was any con-

Brown v. Byam et al.

spiracy or arrangement between them and said Wilkinson to cheat or defraud plaintiff ; but, on the contrary, allege that plaintiff represented to them that said Wilkinson, who was a stranger to them, was a friend and acquaintance of his, and that he requested them to sell said lands to him, (plaintiff,) and take as payment therefor said lots in Cascade, 'and that they consented to this, and at plaintiff's request conveyed the Crawford county land to said Wilkinson, but that they had no knowledge as to what consideration Wilkinson was paying plaintiff therefor. The suit was commenced in June, 1872, and was tried and submitted in October, 1876, when a judgment was entered for defendants. Subsequently, plaintiff filed a petition to vacate this judgment, on the ground that it was obtained by defendants by fraud, and in May, 1881, an order was entered, setting aside the judgment and granting a new trial. On the final hearing, the district court entered judgment for plaintiff for $1,000, and established his vendor's lien therefor on said farm. Defendants appeal.

*Blair & Norris*, for appellants.

*Welch & Welch*, for appellee.

REED, J.—I. The allegation in the petition that there was a conspiracy between defendants and the man Wilkinson, to whom the conveyance of the Crawford county lands was made, is not supported by direct or positive testimony. To establish it, plaintiff relies solely upon circumstantial evidence. The evidence is quite voluminous, and the circumstances relied on to establish said allegation are quite numerous. We do not deem it necessary to set out in this opinion either the evidence or the separate circumstances which we think are established by it, but content ourselves with the statement of the ultimate facts which we think are proven. We are satisfied by the evidence that the transaction in which plaintiff surrendered to defendants the bond for a deed to the Cascade property

1. VENDOR'S lien: facts entitling to: conspiracy to cheat vendor.

and received the railroad bond, and defendants executed the conveyance of the Crawford county lands to Wilkinson, was brought about by the contrivance of the defendant, Philander Byam, and was in execution of a scheme which he had devised to cheat and defraud plaintiff, by inducing him to accept said railroad bond (which was worthless) in lieu of the Cascade property. We are also satisfied that this co-defendant, who is his wife, knew of this scheme, and was a party to it, and assisted in its execution. We are also satisfied that the deed which defendants executed to Wilkinson was never delivered to him, but was retained by defendants, and was subsequently filed for record in the office of the recorder of deeds of Crawford county by Philander Byam, and that this was done when this suit was about to be instituted, and was for the purpose of giving an appearance of honesty to the transaction in which the deed was executed. We are also satisfied that since the transaction, and for the purpose of consummating their wicked scheme of fraud and securing its fruits, the defendants have resorted to the crime of perjury and subornation of perjury, and, in addition to this, Philander Byam has committed the crime of forgery for the purpose of consummating the same end. That plaintiff, under the law, is entitled to some relief against a wrong perpetrated by such means and for such purposes, would seem clear. That he is entitled to a money judgment against defendants, is clear. But it is insisted by counsel that he is not entitled to a vendor's lien on the farm sold to the defendants for the amount of such judgment.

The evidence shows that, when plaintiff elected to accept the Cascade property in part payment for the farm, defendants offered to execute a conveyance of that property to him, but that, for reasons of his own, he preferred that the legal title to the property should be held by defendant, Esther J. Byam, in whom it then was, and the bond for the execution of a deed in the future was accordingly given him, instead of an absolute conveyance. The position of counsel for

defendants is that the execution of this bond operated to vest plaintiff with the equitable title to the property, and from the time of its execution Esther J. Byam was simply a trustee holding the naked legal title to the property, and that the contract for the sale of the farm to defendants was then fully executed, and plaintiff had then received the full price which defendant agreed to pay him therefor, and that the transaction was, in effect, no more than an exchange of the Cascade property for the railroad bond.

If it should be conceded that the contract for the sale and purchase of the farm was fully executed, and that the payment by the defendant of the $600, and the delivery of the bond for the deed to the Cascade property, operated as a full payment of the price of the farm, it would follow, necessarily, that plaintiff would not be entitled to a vendor's lien on the farm to secure the indebtedness which arose out of the final transaction between the parties. For the law gives the vendor a lien for the purchase money only of the property on which the lien is given, (Story, Eq. Jur., § 1217,) and, if the final transaction is to be treated merely as a sale by plaintiff to defendants of the Cascade property, it is very clear that he is not entitled to a lien on the farm to secure the debt created by that sale. But we think that was not the real character of the transaction. The delivery of the title bond to plaintiff cannot be treated as the equivalent of an absolute conveyance of the property to him. Defendants' contract was to convey the Cascade property to plaintiff in part payment for the farm, and that conveyance, when made, was to operate as payment of a specified amount of the price. Until the conveyance was made, it cannot be said that that portion of the price was paid.

The situation of the parties, then, was this: Defendants were under obligation to convey the property to plaintiff in satisfaction of $1,000 of the price of the farm. But the conveyance had not yet been made. The contract with reference to the sale and purchase of the farm in that respect was not

yet executed.   In the final transaction, it was agreed that plaintiff should accept the railroad bond instead of the conveyance of the property, and that defendants should retain the latter.   This amounts to no more than an agreement by plaintiff to accept the bond instead of the property in payment of that portion of the price of the farm which was to have been paid by the conveyance of the property.   And it was not in any proper sense a sale of the property by him to defendants.   As the bond was worthless, its delivery did not operate to satisfy the portion of the price of the farm which it was agreed should be paid by its delivery.   Plaintiff, consequently, is entitled to a vendor's lien for that portion of the price, and that is what is given him by the judgment of the district court.   This view is sustained by *McDole v. Purdy*, 23 Iowa, 277; *Bradley v. Bosley*, 1 Barb., Ch., 125.

II.   On the first trial of the case, it was shown that, on the same day on which the deed from defendants to Wilkin-
2. EVIDENCE: son was filed for record in the recorder's office, in
depositions
may be used   Crawford county, an instrument was also filed
by either
party.      which purported to be a deed from Wilkinson to one E. C. Lewis, conveying to him the land in Crawford county. Plaintiff also introduced the deposition of the notary public before whom said deed from Wilkinson to Lewis was acknowledged, and he swore that, since taking said acknowledgment, he had seen the defendant, Philander Byam, and was satisfied that he was the identical person who appeared before him and represented that his name was A. Wilkinson, and signed and acknowledged said deed to Lewis.   To rebut this evidence, defendant introduced a deposition, which was taken on commission before a notary public in Jackson county, and which purported to be the deposition of E. C. Lewis, and in which the witness swore that he was the E. C. Lewis to whom said conveyance was made, and that he was acquainted with Wilkinson, and knew that he was the person who appeared before said notary public, and signed and acknowledged said conveyance.

On the hearing of the petition for a new trial, plaintiff introduced the deposition of one Samuel Hinton, who swore that he is the person who appeared before the notary public in Jackson county, and personated E. C. Lewis, and gave the testimony which was taken in the deposition by the notary as the testimony of E. C. Lewis, and that his statements therein were false, and that he was induced by the solicitations of defendant, Byam, to go before the notary and give said testimony, and that Byam instructed him as to the answers he should give to the questions which should be asked him. Before the last trial, defendants gave notice that they would not introduce said deposition of E. C. Lewis in evidence. On the trial, however, plaintiff introduced said deposition. They also introduced the deposition of Hinton, and those of other witnesses, whose testimony tends to corroborate Hinton in certain respects.

Defendants now insist that this evidence is incompetent, and should not be considered. We think otherwise. The depositions had been regularly taken during the progress of the cause, and they might be introduced by either party for the purpose of establishing any fact material to the case. If it is true that defendant is the person who personated Wilkinson in the execution of the deed to Lewis, this is a material fact. It shows that he had that deed in his possession, and, as it and the deed to Wilkinson were filed for record on the same day, which was but a few days after the deed to Lewis was acknowledged, and as it is otherwise shown that defendant was in Crawford county at about that time, the reasonable conclusion is that he also had the Wilkinson deed in his possession, and that he is the person who filed said deeds for record. The deeds were filed for record nearly four years after the Wilkinson deed was executed, and defendants swore that they had never seen Wilkinson since the day it was executed, so that, if defendant is the person who filed that deed for record, the conclusion is certain that it never was delivered, which is a very material fact in determining the

character of the transaction in which it was given.    Defendant's act in procuring Hinton to personate Lewis ought to be treated as an admission by him that no such person as Lewis exists, and when he deliberately procured that witness to falsely swear that he (plaintiff) was not the person who executed and acknowledged the deed from Wilkinson to Lewis, he inferen-. tially admitted that the fact could not be proven by the testimony of any witness who would swear to the truth concerning the transaction.    Men. do not resort to false witnesses or false testimony for the purpose of establishing the truth. Subornation of perjury is resorted to only for evil purposes. We have, therefore, regarded the evidence contained in these depositions as both competent and material, and we have considered it in reaching our conclusion in the case.

*3. —— : subornation of perjury: inference against suborner.*

The judgment of the district court, we think, is right, and it is

AFFIRMED.